IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMED KATTAN,[1]<br><br>             Petitioner,<br><br>     vs.<br><br>MARK BOWEN, Warden,<br>Central Valley Modified Community<br>Correctional Facility,[2]<br><br>             Respondent. | No. 2:13-cv-00624-JKS<br><br>MEMORANDUM DECISION |

      Mohammed Kattan, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.[3] Kattan is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Central Valley Modified Community Correctional Facility. Respondent has answered, and Kattan has not replied.

---

    [1]     The petitioner is identified on the California Department of Corrections and Rehabilitation inmate locator website (http://inmatelocator.cdcr.ca.gov/, Inmate No. AH4638) as "Mohammad Kattan." This opinion uses the spelling of his name as provided in his Petition.

    [2]     Mark Bowen, Warden, Central Valley Modified Community Correctional Facility, is substituted for Marion Spearman, Warden, Correctional Training Facility. FED. R. CIV. P. 25(c).

    [3]     Kattan is *pro se* in this Court but his sole issue was thoroughly briefed by his attorneys in state court. Those briefs are available in the record and have been considered by this Court. Arguments and positions attributed to Kattan are inferred from the briefs and memos filed on his behalf. The record in this case includes a transcript of jury voir dire and the questionnaires of the jurors.

I.  BACKGROUND/PRIOR PROCEEDINGS

In June 2010, Kattan was charged with kidnaping for the purpose of committing a lewd act upon a child (count 1) and committing a lewd act upon a child under the age of 14 (count 2) in connection with a July 2009 incident during which Kattan allegedly made a 6-year-old girl touch his penis.  *See People v. Kattan*, No. A132395, 2012 WL 5511041, at *1 (Cal. Ct. App. Nov. 14, 2012).  The information further alleged as to count 2 that Kattan had kidnaped the victim.[4]

In March 2011, a jury convicted Kattan on count 1 of the lesser included offense of felony false imprisonment and found Kattan guilty as charged on count 2.  The jury found not true the special allegation attached to count 2 that Kattan had kidnaped the victim.  The trial court subsequently sentenced Kattan to an imprisonment term of 8 years for count 2 and stayed pursuant to California Penal Code § 654 the sentence for count 1.

Through counsel, Kattan appealed his conviction on the sole ground that the prosecutor committed a *Batson* error and violated Kattan's state and federal constitutional rights by using a peremptory challenge to excuse a minority juror.  *See Batson v. Kentucky*, 476 U.S. 79 (1986) (a shorthand reference to the procedure under which a prosecutor's peremptory strikes of potential jurors are challenged on the basis that the strikes are being made on a discriminatory basis, i.e., because they are members of an identifiable group distinguished on racial, religious, ethnic, or

---

[4]  While Respondent has thoroughly aired the facts underlying the charges against Kattan in its briefs before this Court and in the state court, they have no bearing on the limited issue presented in Kattan's Petition.  If California allowed those charged with spitting on the sidewalk a jury trial and Kattan had been charged with that offense and the voir dire had been handled in the same way, the issue would be the same and it would be decided exactly the same.  It is possible, of course, that some judges might be influenced in a similar case by the nature of the charges, but if so, they would be in violation of their oath and traitors to their profession.

similar grounds); *People v. Wheeler*, 583 P.2d 748 (Cal. 1978) (the California counterpart to *Batson*). The Court of Appeal recounted the following facts underlying Kattan's appeal:

> [Kattan's] claim on appeal relates to the prosecutor's peremptory challenge of a prospective juror identified in the record as SLC.  SLC filled out a juror questionnaire that indicated, among other things, she had a child who was three years old, was employed at Sleep Train as a sales associate, had a spouse or significant other employed by the United States Air Force, had a close friend or relative employed by Fresno State Prison, and did not have opinions or feelings which would make it difficult to judge someone's guilt.
> During voir dire by the court, SLC did not indicate: she had heard anything about the case, she knew any of the potential witnesses, it would be impossible for her to objectively and fairly evaluate the evidence, she knew anybody accused of a similar crime or who had been a victim or witness of a similar crime, or she would automatically believe or disbelieve a police officer witness.  Upon further questioning by the court, she said she had an open mind and could be fair. In response to questions from defense counsel, SLC stated that the fact she has a young child would not affect her ability to be open-minded and that she is not close to the cousin who works at a prison.  The prosecutor did not ask specific questions of SLC.
> The prosecutor's first peremptory challenge was to prospective juror CFC, a physician who expressed concern about the effect of jury service on his business and patients.  The prosecutor's second peremptory challenge was to prospective juror SLC. Defense counsel moved pursuant to *Batson* and *Wheeler* to have SLC reinstated. Defense counsel explained that SLC "appears to be either Hispanic or some heritage, some group of a minority class. [Kattan] is of a minority class, and he's entitled to a jury of his peers. And I'd make that motion and ask that she be reinstated."  The prosecutor responded that defense counsel had not made a prima facie showing.  Defense counsel further argued that SLC "has a child who's three years old, indicated that she can be fair. She has a relative who works at the state prison.  There was no questioning of her that would indicate that she would be unfair, and based [on] that she [is in] a protected class, and so is [Kattan], and I could ask that the motion be granted."
> The trial court stated, "The court does not believe that a prima facie case has been made yet, however, I'm going to at this time invite the district attorney for the record to cite her reason for excusing that particular juror.  [¶]  I will indicate, I also cannot tell by the name or her appearance of her nationality, but it does appear to be some minority. It's just without asking if she has mixed lineage, I just have no idea."  In explaining the peremptory challenge, the prosecutor stated, "The reason why I chose to excuse her is during questioning, she was not all that forthcoming.  In fact, she was very quick to answer.  I didn't feel like I got enough information from her, either with the court's questioning, [defense counsel's] questioning, or my questioning.  [¶]  The other issue that I had is she works for Sleep Train, and I'm very well-aware that they work on commission only, and I would be concerned that she would want to rush through the process."  The court responded and ruled as follows: "There were no questions on that. But in any event, I will take the prosecutor at her word that there was not an impermissible reason for the excusing of that particular juror in making a sufficient

record.  However, obviously we're clearly on notice of [defense counsel]'s concerns.  But in any event, we'll get the jurors back here.  The motion is denied.  And we will excuse [SLC] when she comes back in."

*Kattan*, 2012 WL 5511041, at *1-2.

The California Court of Appeal affirmed the judgment against Kattan in a reasoned, unpublished opinion issued on November 14, 2012.  *Id.* at *3.  While the appellate court acknowledged that "[t]he bare record on appeal provides some basis to be skeptical of the reasons offered by the prosecutor" and that "the explanations presented by the prosecutor were not very persuasive," it noted that the reasons were "not fantastical or contradicted by other information in the record."  *Id.*  After finding that "the record does not show that the trial court applied an incorrect legal standard," the court rejected Kattan's contention that it should review the issue de novo, *id.* at *3 n.3, and instead gave "due deference to the [trial] court," *id.* at *3.  In light of that deference, the appellate court held that the trial court's acceptance of the prosecutor's race-neutral explanation was not clearly erroneous and "substantial evidence supports the court's assessments of the prosecutor's stated reasons for the peremptory challenge."  *Id.* at *3.  Kattan filed a petition for review in the California Supreme Court, which was denied without comment on January 30, 2013.

Kattan timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on March 6, 2013.

## II. GROUNDS/CLAIMS

In his *pro se* Petition, Kattan raises the sole argument he raised on appeal, namely, that the trial court erred in denying the *Batson/Wheeler* motion.[5]

## III.  STANDARD OF REVIEW

---

[5] *See* n.3, *supra*.

Kattan's federal claim was decided on the merits in state court. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Kattan has not replied to Respondent's answer.  The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."  28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952).  Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

Kattan argues that the prosecution impermissibly used a peremptory challenge to excuse SLC from the jury pool.  The Equal Protection Clause prohibits purposeful racial discrimination in the selection of the jury.  *Batson*, 476 U.S. at 86.[6]  In *Batson*, the Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges in a

---

[6] Potential jurors were asked to answer questions on a written jury questionnaire, copies of which are included in the record.  The questionnaire did not ask jurors to disclose their race or ethnicity.  Jurors were identified by initials during trial though their names appear on their jury questionnaire.  SLC was never asked how she would characterize herself.  A transcript of the entire voir dire is also in the record.  As we shall see, defense counsel thought SLC might be Hispanic "or some other minority."  The prosecutor doubted she was a minority and said her name was not "Hispanic."  The trial court agreed that her true name is not Hispanic but speculated that she might be of mixed race, though without asking her, it was not possible to determine her race or ethnicity.  No party felt that it would be proper to ask her.  SLC's questionnaire, where she both prints and signs her name, indicates that her last name is "Csontos," which is Hungarian (although Csontos may be a married name).  *See* http://forebears.io/surnames/csontos.

For purposes of this case, the Court assumes that, if Kattan proved by a preponderance of the evidence that the prosecutor discriminated against SLC because she is of Spanish or Portugese or Hungarian or mixed Spanish or Portugese and native American descent, he would be entitled to relief under *Batson.*

manner violating the Equal Protection Clause: 1) a defendant raising a *Batson* claim must establish a *prima facie* case of discrimination; 2) once a *prima facie* case of discrimination is established, the burden of offering race-neutral reasons for the strikes shifts to the prosecutor; 3) after the prosecutor offers race-neutral reasons, the trial court has the duty to determine if the defendant has established purposeful discrimination. *Paulino v. Harrison*, 542 F.3d 692, 699 (9th Cir. 2008) (citing *Batson*, 476 U.S. at 98).

A defendant's burden to establish a *prima facie* case at the first step and the prosecutor's burden to provide race- (or ethnic-) neutral reasons for the challenge at the second step are burdens of going forward with the evidence, while the defendant's burden at the third step is a true burden of persuasion to convince the court that the challenge was motivated at least in part by some prohibited group bias or prejudice. The ultimate burden of persuasion never shifts. *Batson*, 476 U.S. at 93; *see Purkett v. Elem*, 514 U.S. 765, 768 (1995).

In this case, the trial court stated that Kattan had not satisfied the first step by showing a *prima facie* case of discrimination. The Court of Appeal, however, in conformity with then-controlling California law declined to address whether Kattan established a *prima facie* case and instead considered whether the prosecutor's proffered reasons for striking SLC from the jury provided a genuine, race-neutral justification for the challenge. *Kattan*, 2012 WL 5511041, at *2.

A.  *Is the first Batson step regarding a prima facie case moot in this case*.

Since the Court of Appeal issued a reasoned, though not published opinion, normally this Court would review only that opinion and ignore an earlier opinion by the trial court. Thus, since the Court of Appeal focused on the second and third prong of the *Batson* rule and ignored the first step, this Court would be limited to the second and third steps and evaluate the Court of

Appeal's decision giving due AEDPA deference. There is, however, an important reason for not limiting review in this way, and the absence of a prima facie case is of great importance.

The Court of Appeal did not disagree with the trial court's conclusion that Kattan had failed to make a *prima facie* case at step one of the *Batson* analysis. Rather, the trial court followed then-controlling precedents from the California Supreme Court which strongly recommended that trial courts do not stop the *Batson* inquiry at the first step but in all cases should ask the prosecutor for her reasons.[7] The explanation for this is set out in the Court of Appeal's decision. In *People v. Wheeler*, 583 P.2d 748 (Cal. 1976), the California Supreme Court anticipated *Batson* by eight years and adopted a three-step procedure almost identical to the one later adopted in *Batson*. The California rule differed in two respects from *Batson*, its rule was predicated on the California equivalent to the Sixth Amendment right to a jury chosen from a fair cross section of the community while *Batson* rests upon the equal protection clause of the Fourteenth Amendment, and more important for this case, *Wheeler's* first step required the defendant to prove a "strong likelihood" that the prosecutor's pre-empt was discriminatory to make a *prima facie* case while *Batson* only required "an inference of a discriminatory purpose" to satisfy the first step. *Compare Wheeler*, 583 P.2d at 764-66, with *Batson*, 476 U.S. at 98.

In *Johnson v. California*, 545 U.S. 162, 168 (2005), the United States Supreme Court followed the Ninth Circuit and disapproved the "strong likelihood" formulation of step one, stressing that the defendant was not required to prove discrimination at step one but need only raise an inference. Thereafter, a real danger existed that an appellate court, perhaps years after

---

[7] The California Supreme Court encourages California trial courts to ask prosecutors for explanations of contested peremptory challenges even in the absence of a *prima facie* case. *See People v. Howard*, 175 P.3d 13, 25 (Cal. 2008); *People v. Bonilla*, 160 P.3d 84, 105 n.13 (Cal. 2007).

the trial, would disagree with a trial court's rejection of a defendant's *prima facie* case and remand for a new trial at great expense to the parties and at the risk that evidence would be lost and witnesses unavailable. By requiring trial courts to make a record regarding the prosecutor's reasons in every case, the necessary record would be available to consider steps 2 and 3 should a later court disagree about the presence of a *prima facie* case of group bias. If, however, evidence of the prosecutor's actual motivation was present in every case, it seemed reasonable to hold that a finding that the defendant had failed to make a *prima facie* case was moot because the purpose of the *prima facie* case in the *Batson* formulation was to trigger the prosecutor's duty to explain her pre-empt. *See People v. Mills*, 226 P.3d 276, 293-95 (Cal. 2010)( where the trial court finds no *prima facie* case but permits the prosecutor to state her reasons and accepts the credibility of the reasons there is a first stage/third stage hybrid, the rejection of the *prima facie* case is moot, the reviewing court expresses no opinion on the presence of a *prima facie* case and skips directly to the third stage and determines in light of the prosecutor's reasons whether defendant has proved intentional discrimination).

      Recently, the California Supreme Court rethought *Mills* and like cases and concluded that where the trial court rules that there is no *prima facie* case but hears from the prosecutor and finds the prosecutor's race neutral reasons credible and denies a *Batson* challenge at the third stage, an appellate court should nevertheless rule on the *prima facie* case. *See People v. Scott*, No. S064858, __ P.3d __, 2015 WL 3541280, at *12-17 (Cal. Jun. 8, 2015). In so doing, the court should not consider the prosecutor's purported race-neutral reasons at the first stage, and if the trial court's finding of no *prima facie* case is affirmed, must nevertheless consider whether the prosecutor's second stage explanation is itself discriminatory. *Id.* at *17.

If the only purpose for requiring a *prima facie* case was to trigger a race-neutral explanation for the challenge, and under California's prudential rule the prosecutor will always be required to give a contemporaneous explanation for a disputed challenge, then the first *Batson* step will always be "moot" and might as well be dispensed with.  In this case, whether Kattan made a *prima facie* case is crucial because it helps to understand the otherwise cursory treatment the prosecutor and the trial court seemed to give the third step of the *Batson* protocol.

It seems, therefore, that this Court should consider whether Kattan made a *prima facie* case.  If he did, that fact alone would lend weight to the ultimate question whether Kattan proved by a preponderance of the evidence that the prosecutor's challenge to SLC was race-based.  Here, the trial court explicitly stated, "The Court does not believe that a *prima facie* case has been made yet."  The first step of *Batson* has thus not been mooted.  *See Hernandez v. New York*, 500 U.S. 352, 359 (1991) (existence of *prima facie* case mooted when the prosecutor volunteered an explanation and the trial court ruled on the ultimate issue of intentional discrimination without ruling on the preliminary issue).  Based on the previously-discussed recent jurisprudence from the California Supreme Court, this Court agrees that where, as here, the trial court determined that the defendant failed to establish a *prima facie* case of discrimination, a reviewing court should first review the trial court's first-stage ruling.  *Scott*, 2015 WL 3541280, at *17.  This Court will therefore follow the procedure laid out by the California Supreme Court and, as discussed below, first address whether Kattan made a *prima facie* showing.  *See id.* ("In sum, where (1) the trial court has determined that no prima facie case of discrimination exists, (2) the trial court allows or invites the prosecutor to state his or her reasons for excusing the juror on the record, (3) the prosecutor provides nondiscriminatory reasons, and (4) the trial court determines that the prosecutor's nondiscriminatory reasons are genuine, an appellate court

should begin its analysis of the trial court's denial of the *Batson/Wheeler* motion with a review of the first-stage ruling.").

Having determined that it should review the trial court's determination that no *prima facie* case has been established, the Court must also determine the appropriate standard of review. Under AEDPA, the Court must review a state appellate court's decision under the deferential AEDPA standard to determine whether it was contrary to or an unreasonable application of *Batson*, or rested on an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254(d)(1) & (2). Because the Court of Appeal's decision did not rest on *Batson's* first step, however, it is not clear whether AEDPA deference applies to the trial court's ruling below. Nonetheless, federal courts may deny "writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review." *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010). In other words, if Kattan cannot demonstrate a *Batson* violation on *de novo* review, which is a more favorable standard of review for him, he cannot succeed under AEDPA's deferential standard. The Court will therefore consider *de novo* whether Kattan established a *prima facie* case of discrimination.

B.     *Prima facie case*

To establish a *prima facie* case of discrimination under *Batson*'s first step, the defendant must show that: 1) the prospective juror is a member of a cognizable racial group; 2) the prosecutor used a peremptory strike to remove the juror; and 3) the totality of the circumstances raises an inference that the strike was on account of race. *Batson*, 476 U.S. at 96; *Crittenden v. Ayers*, 624 F.3d 943, 955 (9th Cir. 2010). A defendant satisfies the requirements of *Batson*'s

first step by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.  *Johnson v. California*, 545 U.S. 162, 170 (2005).

As previously discussed, it is not clear that SLC was a member of a cognizable group.  But even assuming that SLC is a member of a racial minority, thus satisfying the first two prongs of the inquiry, Kattan cannot prevail on the third step because the totality of circumstances do not raise an inference that discrimination has occurred.

As an initial matter, Kattan's race or nationality is not clear from the record.  He has a name associated with Islam, but people of all races and ethnicity may be Muslim.[8]  It nonetheless appears conceded that Kattan is a member of a different race than the challenged juror.  The Supreme Court has held that criminal defendants may object to race-based peremptory challenges of jurors regardless of whether the defendant and the excluded juror are of the same race.  *Powers v. Ohio*, 499 U.S. 400, 415-16 (1991).  In so doing, however, the Court noted that it may be difficult to make a *prima facie* showing when the potential juror and the defendant are of different races.  *Id.* at 416 ("Racial identity between the defendant and the excused person might in some cases be the explanation for the prosecution's adoption of the forbidden stereotype, and if the alleged race bias takes this form, it may provide one of the easier cases to establish both a prima facie case and a conclusive showing that wrongful discrimination has occurred.  But to say that the race oft he defendant may relevant to discerning bias in some cases does not mean that it will be a factor in others, for race prejudice stems from various causes and may manifest itself in different forms.").

---

[8] The Supreme Court has not yet held that peremptory challenges based upon religious affiliation offends *Batson*.  *See United States v. Brown*, 352 F.3d 654, 662 (2d Cir. 2003).  Kattan points to no evidence disclosing SLC's religious affiliation, if any.

Although an inference of discrimination may be found where the prosecutor strikes a large or disproportionate number of panel members from the same racial group, Kattan does not make a statistical argument and, indeed, could not do so given the small numbers involved. *See United States v. Collins*, 551 F.3d 914, 921 (9th Cir. 2009) ("The lack of other African-Americans in the jury pool renders mathematical trends and patterns meaningless."); *Hargrove v. Pliler*, 327 F. App'x 708, 709 (9th Cir. 2009) (rejecting step one of *Batson* claim because it "hinges on a statistical argument involving very small numbers" that, "standing alone, is insufficient to establish a *prima facie* case in light of the ample legitimate reasons in the record for the prosecution's challenge").⁹ Kattan himself acknowledges that SLC was the only minority struck by the prosecution *and* was the only minority on the panel.¹⁰

A comparison of the stricken juror with jurors permitted to serve may also shed light on whether there is a *prima facie* case. *Miller-El*, 545 U.S. at 241, 247-48.¹¹ But Kattan does not

---

⁹ Cited for persuasive value pursuant to Ninth Circuit Rule 36-3.

¹⁰ While "a *prima facie* case does not require a pattern because 'the Constitution forbids striking even a single prospective juror for a discriminatory purpose,'" *Collins*, 551 F.3d. at 919 (quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994)), it is equally clear that "the striking of one juror of a cognizable racial group does not by itself raise an inference of discriminatory purpose," *Tolbert v. Gomez*, 190 F.3d 985, 988 (9th Cir. 1999); *see also Crittenden*, 624 F.3d at 955-57; *Gonzales v. Brown*, 585 F.3d 1202, 1206 (9th Cir. 2009). Thus, if after an objection the trial court finds no *prima facie* case but asks the prosecutor to disclose her reason and she were to say, "my reason should be obvious, the juror is African-American," the explanation would itself be sufficient to show a discriminatory motive without further evidence of plan or comparative jury analysis. But in the absence of an admission or other "smoking gun," there must be some evidence to support an inference, and a single challenge to a single juror standing alone cannot supply that evidence.

¹¹ Comparative analysis is most often used at the third stage of the Batson rule in evaluating the prosecutor's reasons for her pre-empt but may be used at the first stage in determining whether there is a *prima facie* case. *See, e.g.*, *Crittenden*, 624 F.3d at 956.

point to any other jurors who shared the relevant attributes as SLC that were not challenged by the prosecutor, nor did he provide any comparative analysis on direct appeal.[12]

Thus, the Court must determine whether there are any other indications of intentional discrimination here. Consistent with that review, the record of the voir dire does not disclose any other circumstances suggesting that the prosecutor's dismissal of SLC was racially motivated. Although the fact that a prosecutor did not engage in any meaningful question of jurors belonging to the group at issue before striking them may indicate discrimination, *Fernandez v. Roe*, 286 F.3d 1073, 1079 (9th Cir. 2002), this Court's review of the record shows that the prosecutor was consistent in her review of prospective jurors. The record reflects that the prosecutor conducted most of her voir dire by asking questions of the jurors as a group rather than specific questions to individual jurors and had the benefit of the answers provided during the court's and defense counsel's voir dire, which preceded hers. It does not appear that the prosecutor's questioning of SLC (or lack thereof) differed greatly from her questioning of other potential jurors, differentiating this case from *Miller-El*, in which the Supreme Court found that disparate questioning based on race supported its finding that the prosecutor's stated justifications for striking African-American jurors were mere pretext. *See Miller-El*, 545 U.S. at 255-63. Nor is his claim that SLC appeared on the surface to be pro-law enforcement sufficient on its own to establish a *prima facie* case. His argument that SLC, as a mother with a relative

---

[12] To the extent that a sua sponte comparative analysis is necessary in the absence of any participation by the parties, I have reviewed the transcript of the voir dire and all of the jury questionnaires and have not found any circumstantial evidence 1) establishing a prima facie case or 2) impeaching the prosecutor's explanation. *See McDaniels v. Kirkland*, 760 F.3d 933, 938-41 (9th Cir. 2014) (discussing comparative jury analysis where it was not utilized in the state courts or addressed by the petitioner). Where, as here, the petitioner failed to satisfy his *prima facie* case, the need for a critical evaluation of the prosecutor's explanation, including sua sponte comparative jury analysis, would appear less appropriate.

who was a prison employee, would have been favorable to the prosecution is too speculative and isolated to imply a discriminatory purpose.

Accordingly, even on *de novo* review, Kattan fails to establish a *prima facie* case of discrimination and thus cannot prevail on his *Batson* claim.

C.   *Race-neutral justification*

Proceeding to the second and third step of the *Batson* procedure, the Court of Appeal determined that the prosecutor's stated reasons for her challenge were race-neutral on their face, and Kattan does not seriously dispute this finding.  Kattan focuses his argument on the third step and argues that the prosecutor's reasons, while facially race neutral, were pretexts for discrimination.  The Court of Appeal rejected this argument..

I am convinced that Kattan has failed to prove that its conclusion was an unreasonable decision on the facts or in its application of the law of the Supreme Court.  Kattan cannot prevail because he fails to show that the state appellate court's determination was unreasonable or contrary to federal law.  On direct appeal, Kattan argued that the prosecutor's proffered reasons for striking the juror were neither reasonable or genuine because SLC "was likely to be pro-prosecution, as the mother of a young child and relative of a prison employee." *Kattan*, 2012 WL 5511041, at *3.  Kattan also contended that the prosecutor's claim that she was concerned about the lack of information about SLC and the economic impact of jury service on SLC was belied by her failure to ask SLC any questions.  *Id.*  The Court of Appeal rejected those arguments, concluding that the trial court "presumably based its ruling on the court's observations of the demeanor of the prosecutor and SLC." *Id.*

On federal habeas review, AEDPA "imposes a highly deferential standard for evaluating state-court rulings" regarding *Batson* claims that "demands that state-court decisions be given

the benefit of the doubt." *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). Under the AEDPA, a federal habeas court may only grant relief "if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge." *Rice v. Collins*, 546 U.S. 333, 338 (2006). This "standard is doubly deferential: unless the state appellate court was objectively unreasonable in concluding that the trial court's credibility determination was supported by substantial evidence, we must uphold it." *Briggs v. Grounds*, 682 F.3d 1165, 1170 (9th Cir. 2012).

Here, the prosecutor indicated that she struck SLC because of SLC's demeanor and her belief that SLC worked on commission only and thus would be suffer adverse economic impact by her jury service. The trial court noted that there were no questions asked as to the impact of SLC's jury service, but stated that, "in any event, I will take the prosecutor at her word that there was not an impermissible reason for the excusing of that particular juror in making a sufficient record." On appeal, the Court of Appeal stated that the trial court "apparently accepted the prosecutor's other explanation, which was based on the demeanor of the juror" and "presumably based its ruling on the court's observations of the demeanor of the prosecutor and SLC." *Kattan*, 2012 WL 5511041, at *3.

Construing Kattan's *pro se* Petition liberally, it appears that Kattan argues that, because the trial court made no express findings concerning the demeanor of SLC, this Court cannot presume that the trial court credited the prosecutor's assertion that SLC was not forthcoming, which would have an impact on her jury service. In Kattan's view, the trial judge's conclusory statement that "I will take the prosecutor at her word" does not show that the trial judge "actually made a determination concerning [the prospective juror's] demeanor." *Snyder v.*

*Louisianna*, 552 U.S. 472, 479 (2008). In *Snyder*, the Supreme Court held that mere acceptance that the prosecutor's proposed justification was race-neutral does not amount to a factual finding that the trial judge agrees with the prosecutor's assessment of the juror's demeanor. *Id.* (holding that court could not "presume that the trial judge credited the prosecutor's assertion that [a prospective juror] was nervous" when the judge simply stated "I'm going to allow the challenge"); *Cook v. LaMarque*, 593 F.3d 810, 815 (9th Cir. 2010) (California Court of Appeal failed to undertake a meaningful inquiry into evidence of prosecutor's intent in striking minority jurors where the court "merely 'reiterated the prosecutor's stated reasons, and then found they were race-neutral'") (citation omitted); *Reynoso v. Hall*, 395 F. App'x 344, 350 (9th Cir. 2010) (trial judge's statement "I accept those reasons as being not based upon race or ethnicity" did not constitute a factual finding regarding the juror's demeanor).

Kattan, however, believes that these cases stand for two propositions: 1) the trial judge cannot credit a prosecutor's statements about a juror's demeanor unless she states on the record both that she observed the juror during voir dire and that her own observation corroborates the prosecutor; and 2) the prosecutor may not challenge a juror based upon alleged fears regarding that juror unless she questions the juror regarding that fear. Neither proposition finds support in the holdings of the United States Supreme Court.

The Supreme Court has never held that the trial court make express findings of fact regarding her observation of the challenged juror's demeanor or even that she had observed that demeanor. *See Thaler v. Haynes*, 559 U.S. 43, 47-48 (2010) (trial judge who had not attended voir dire or observed juror's demeanor may nevertheless rule on *Batson* objection including at step 3); *Williams v. Rhodes*, 354 F.3d 1101, 1108 (9th Cir. 2004) (trial court need not make

express findings regarding the prosecutor's credibility but must evaluate meaningfully the persuasiveness of any neutral explanation).  At this point, the importance of the trial court's earlier finding that Kattan failed to make a *prima facie* case is important.  The purpose of the prosecutor's race-neutral explanation is to rebut a *prima facie* case; but if there is no *prima facie* case, there is nothing to rebut.  In such cases, the trial court's evaluation of the prosecutor's explanation may be less thorough than if the trial court had previously found a *prima facie* case (unless, of course, the prosecutor's explanation itself was inherently discriminatory).

Finally, the trial court and the Court of Appeal remarked that the prosecutor had not asked SLC specific questions regarding the bases for the challenge.  If a juror has difficulties articulating her views or gives contradictory or ambiguous responses, it would be natural for a lawyer to seek clarification through voir dire.  But where, as here, SLC was clear that she had no reason for not serving, that she could be fair to both sides and that she had an open mind, there was no need for clarification.  Obviously, the prosecutor had doubts remaining.  There is no Supreme Court case that holds that, in a *Batson* context, a juror's responses are binding on a lawyer unless impeached or contradicted.

The trial court's determination that the prosecutor did not engage in purposeful discrimination was not an unreasonable application of Supreme Court authority.  For the reasons discussed above, a review of the record provides no indication that the prosecutor's race-neutral justifications were mere pretext for discrimination.  Indeed, Justice Breyer has commented that "the exercise of a peremptory challenge can rest upon instinct not reason."  *Rice*, 546 U.S. at 343 (Breyer, J., concurring).  It is Kattan's burden to prove purposeful discrimination.  *See Purkett*, 514 U.S. at 768 ("the ultimate burden of persuasion regarding racial motivation rests with, and

never shifts from, the opponent of the strike"). Again, Kattan provides no comparative juror analysis that would indicate that the prosecutor's provided reasons were a sham, and the record does not support that conclusion. Kattan has thus failed to satisfy his burden at the third stage of the *Batson* inquiry as well.

## V. CONCLUSION AND ORDER

Kattan is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court will grant a Certificate of Appealability ("COA"). *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). The COA extends only to Kattan's challenge to the pre-empt of Juror SLC.[13]

The Clerk of the Court is to enter judgment accordingly.

Dated: July 8, 2015.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge

---

[13] My conclusion that Kattan failed to establish a *prima facie* case at any point may seem inconsistent with granting a COA. Two factors persuade me to grant the COA. First, almost all of the Supreme Court cases which constitute *Batson* and its progeny were split decisions with thoughtful dissents. Second, the *Batson* rule has continuously evolved since its inception. The Ninth Circuit has on a number of occasions discussed in general terms what is needed for a *prima facie* case, but in most of those cases, it was aided by comparative jury analysis which the members of the panel found controlling. Here, the raw materials are present, but the parties found nothing in the jury questionnaires or the voir dire to specifically address, and my cursory juror comparison was not helpful.